IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JAMES ALLEY,<br><br>      Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>      Defendant. | 8:14-CV-128<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the denial, initially and upon reconsideration, of the plaintiff James Alley's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* and supplemental social security income benefits under Title XVI of the Act, 42 § 1381, *et seq.* The Court has considered the parties' filings and the administrative record. For the reasons discussed below, the Commissioner's decision is reversed and remanded for further proceedings consistent with this order.

## I. PROCEDURAL BACKGROUND

Alley applied for disability insurance benefits on June 17, 2011. T134.[1] His claim was denied initially on August 23, and upon reconsideration on November 17. T78–79, 88. Alley appealed and requested a hearing from an administrative law judge (ALJ). T92–94. The ALJ held a hearing on January 29, 2013. T29. In a decision dated March 20, the ALJ found that Alley was not disabled as defined under 42 U.S.C. §§ 416(i) or 423(d), and therefore not entitled to benefits. T23.

1. Sequential Analysis

  Disability, for purposes of the Social Security Act, is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] All citations to the administrative record (filings 11-1 through 11-8) are given as "T [Transcript]" followed by the page number.

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i) & 423(d).

To determine whether a claimant is entitled to disability benefits, the ALJ performs a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). At step one, the claimant has the burden to establish that he has not engaged in substantial gainful activity since his alleged disability onset date. *Cuthrell v. Astrue*, 702 F.3d 1114, 1116 (8th Cir. 2013). If the claimant has engaged in substantial gainful activity, he will be found not to be disabled; otherwise, at step two, he has the burden to prove he has a medically determinable physical or mental impairment or combination of impairments that significantly limits his physical or mental ability to perform basic work activities. *Id.*

At step three, if the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, he is automatically found disabled and is entitled to benefits. *Id.* Otherwise, the analysis proceeds to step four. But first, the ALJ must determine the claimant's residual functional capacity (RFC), which is used at steps four and five. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC is what he can do despite the limitations caused by any mental or physical impairments. *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). At step four, the claimant has the burden to prove he lacks the RFC to perform his past relevant work. *Cuthrell*, 702 F.3d at 1116. If the claimant can still do his past relevant work, he will be found not to be disabled; otherwise, at step five, the burden shifts to the Commissioner to prove, considering the claimant's RFC, age, education, and work experience, that there are other jobs in the national economy the claimant can perform. *Id.*; *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010).

2. The ALJ's Findings

Alley alleged disability primarily as a result of mental illnesses, including bipolar disorder, major depressive disorder, post-traumatic stress disorder, and schizophrenia. T227, 13. He initially alleged an onset date of July 15, 2009, but later amended it to February 2, 2011. T31, 33. At that time, Alley was 46 years old. T134. The ALJ found that, based on his earnings record, Alley could remain insured through March 31, 2015. T11. Thus, the question before the ALJ was whether Alley had demonstrated he had a disability for some period of not less than 12 months between February 2, 2011 and March 31, 2015.

At step one, the ALJ found that Alley had not engaged in substantial gainful activity following his alleged onset date. T13. Next, at step two, the ALJ found that Alley's mood disorder and post-traumatic stress disorder were

severe impairments.[2] T13–14. At step three, the ALJ found that Alley had no impairment that met or medically equaled a listed impairment. T14–15. The ALJ then determined that Alley had the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to performing unskilled work, with an svp of 1-2, that is routine and repetitive, and that does not require extended concentration or dealing with job changes; and the claimant is limited to no more than occasional interaction with supervisors, coworkers, and the general public, and must avoid constant, intense or frequent interaction." T15–16.

At step four, the ALJ found, based upon the testimony of a vocational expert, that Alley retained his ability to perform past relevant work as a warehouse worker. T21. Alternatively, the ALJ went on to find at step five that Alley did not have a disability under the Medical-Vocational Guidelines (the "Grids"), *see* 20 C.F.R. Part 404, Subpart P, Appx. 2. T22. And as a further alternative at step five, the ALJ found, based on the vocational expert's testimony, that Alley could perform other jobs that existed in significant numbers in the national economy. T22–23. So, the ALJ found that Alley was not disabled. T23.

On February 21, 2014, the Appeals Council of the Social Security Administration (SSA) denied Alley's request for review. T1. Alley's complaint (filing 1) seeks review of the ALJ's decision as the final decision of the Commissioner under sentence four of 42 U.S.C. § 405(g).

## II. FACTUAL BACKGROUND

At the time of alleged onset, Alley lived with his elderly mother in her apartment in a senior living community. T37. He assisted her with some household tasks, such as grocery shopping and cleaning. T37. He is divorced, and has no children. T36. He has occasionally dated "but basically lives an isolated life." T321. In February 2011, Alley had no steady employment, but worked "under the table" for an auto body shop part-time. T355. He lost that job in March 2011, T336, and has not had a job since, though he does sometimes perform car and bicycle repairs for a friend for about $100 per week, T227.

Before the auto body shop, Alley held a variety of jobs, including crane operator, T44, ATM technician, T41, and supermarket stocker, T41. Alley graduated from high school, and attended an auto body repair program at University Technical Institute. T443. He was in the United States Navy for

---

[2] Alley also alleged a knee injury. However, the ALJ found that no evidence indicated that Alley experienced any limitations resulting from the injury. T58. Alley has not objected to this finding, and so the Court will not discuss this condition further.

about 4 years in the 1990s. T38. In the Navy, he worked in the "crash and salvage crew" and then as a Seabee. T38. He did a tour in Bosnia and saw some combat during his service. T336. During this time he also witnessed the deaths of three fellow servicemen in accidents. T445. He was other than honorably discharged after an altercation in a bar with an officer. T432.

On February 2, 2011, the alleged onset date, Alley visited the Veterans Affairs Medical Center in Omaha. T352. He complained that he had been hearing voices, which told him he would be better off dead, and which had been worsening. T355. Alley said he was preoccupied with suicide, and had plans to hang himself. T355. He also reported having homicidal ideations toward his boss at the auto body shop. T263. Alley was not eligible to be treated at the VA because of his discharge status. T359. Instead, he was transferred to Lasting Hope Recovery Center for inpatient treatment. T259.

At intake at Lasting Hope, Alley was evaluated by Syed Qadri, M.D. T263. Qadri observed that Alley had "suicidal ideation, homicidal ideation, auditory and visual hallucinations, paranoia and delusions." T266. He also noted that although Alley's cognition was "intact," his insight and judgment were "poor." T266. Qadri diagnosed Alley with bipolar disorder type 2, major depression with psychotic features, rule out schizoaffective disorder, rule out post-traumatic stress disorder, rule out methamphetamine abuse versus dependence. T266. Qadri assigned Alley a Global Assessment of Functioning (GAF) score of 20. T266. He prescribed Celexa and Seroquel, and admitted Alley for inpatient treatment "with precautions for suicide, homicide, and psychosis." T267. Alley was discharged from inpatient care on February 15, 2011, with the recommendation to seek outpatient treatment. T256. He was prescribed Lexapro and Risperdal. T256. At this time, Qadri assessed him a GAF of 51. T256.

Shortly after, on March 8, 2011, Alley was incarcerated for possession of methamphetamine. T283. He was placed on suicide watch the same day, after saying that he thought about suicide "all the time" and that "if anyone pissed him off, no telling what he would do." T286. However, he was released from suicide watch the next day. T278. He continued to seek treatment while incarcerated. *See* T293. On one occasion, he saw a mental health professional because he thought his medication was too strong. T289. The professional reported that Alley was "pleasant" but "seemed paranoid." T289. On April 4, he saw a psychiatrist, Eugene Oliveto, M.D., who observed that Alley was paranoid and "possibly delusional," with "limited cognitive abilities." T293. He gave Alley a GAF of 45. T293.

After his release, on May 20, 2011, Alley sought treatment through Lutheran Family Services as a requirement of his mental health diversion program. T326. In his initial biopsychosocial assessment, he reported that his

4

difficulties with "trusting people" had worsened after incarceration. T326. His therapist, Charice Butler, assigned him a GAF of 45. T328.

On June 14, 2011, Alley met with Oliveto at Lutheran Family Services. T322. Oliveto concluded that Alley had had schizophrenia for most of his life, but had "been able to cover it up with his rather pleasing personality and smile." T322. Oliveto said that Alley's memory was poor, and his judgment and insight "definitely need improvement." T322. Oliveto noted that although Alley accepted he had schizophrenia, he did not "understand what it is." T322. Oliveto prescribed Invega for Alley's schizophrenia, and directed Alley to continue to attend weekly therapy sessions with Butler. T322. However, Oliveto noted that Alley said he could not afford his Lexapro and Risperidone because he had been unable to find work. T3214. Once again, Alley was given a GAF of 45. T322. A month later, on July 14, Alley met with Oliveto again for medication management. T434. Oliveto noted that the Invega seemed to have improved Alley's schizophrenia symptoms, but still gave him a GAF of 45. T434. He renewed Alley's prescription. T434.

On July 28, 2011, Jennifer Lindner, Ph.D., examined Alley to determine his eligibility for disability benefits. T335. Alley told her that he "hears voices related to war time asking him for help," and that he "has nightmares in which he re-experiences past traumatic events related to his time in the military." T337. He reported feelings of hypervigilance and paranoia, as well as violent thoughts, which he has not acted on. T337. Lindner concluded Alley "would have difficulty in social functioning due to poor interpersonal skills, difficulty relating to others and paranoid ideation." T338. Although Lindner believed Alley was capable of "understanding short and simple instructions," she predicted he "would struggle with relating appropriately to coworkers and supervisors due to his emotional volatility and tendency to react aggressively and struggle with adapting to changes in the environment due to his hostility, paranoid ideation, and difficulty in dealing with stressors." T338. She gave him a GAF of 50. T339.

On August 5, 2011, after Alley tested positive for methamphetamine use, he was instructed to complete a chemical dependency evaluation. T442. His evaluator concluded that he had an amphetamine dependence. T449. He recommended "Clinically Managed High Intensity Dual Diagnosis Residential Services," to include a "dual diagnosis short term residential treatment program that addresses both . . . mental health and chemical dependency issues." T450.

On August 22, 2011, Lee Branham, Ph.D., reviewed Alley's medical documents for the purpose of evaluating Alley's eligibility for disability benefits. T402. He evaluated Alley's alleged disabilities from the possible onset date of February 2, 2011 through February 2012—12 months later.

T402. He concluded that the "Impairment(s) [were] Severe But Not Expected to Last 12 Months." T402. He noted his belief that "[w]ith continued treatment and compliance, it is reasonable to expect claimant will regain the ability to do at least more routine types of work with only mild to moderate limitations. Duration to 2/2012." T414. Branham also completed a Mental Residual Functional Capacity Assessment. T416. He checked a box indicating that the Assessment was not for a "Current Evaluation" but for "12 Months After Onset: 2/2012." T416. In this assessment, he checked boxes indicating that he expected Alley's abilities to be either "Not Significantly Limited" or "Moderately Limited" by February 2012. T416–17. On November 15, Christopher Milne, Ph.D., affirmed Branham's findings in a brief checklist, without further medical comment. T451.

    Due to the long waiting list for the residential treatment program, Alley was unable to immediately enroll. T441. Instead, on August 23, 2011, he was instructed to attend intensive outpatient treatment until a space in a residential treatment center became available. T441. Thus, on September 26, Butler referred him to an intensive outpatient substance abuse treatment program, also provided by Lutheran Family Services. T431. At the time of his discharge from Butler's care, he had attended 16 therapy sessions with her. T431. She assigned him a GAF of 45 upon discharge. T431.

    In the meantime, Alley continued to see Oliveto for medication management. T458. On September 29, 2011, he questioned his need for the Invega prescription due to side effects. T458. Oliveto "let him know he need[ed] it" and prescribed additional medications, Viagra and Lorazepam, to help with the side effects. T458. Oliveto gave him a GAF of 45. T458.

    While in intensive outpatient treatment, Alley "struggled with attendance." T435. He was discharged on October 13, 2011 for missing treatment sessions. T435. He remained on the wait list for the residential treatment. T435. He had a GAF of 45 when discharged. T435. Alley stated during the administrative hearing that he stopped attending treatment because he was unable to afford even the reduced fee that Lutheran Family Services charged. T56.

    Alley stated at the administrative hearing that between his discharge from Lutheran Family Services and the hearing, he continued to take Lexapro and Risperidone, which he obtained for free from Siena/Francis House. T47–48, 56. According to Alley's counsel, records of his visits to Siena/Francis were not available because Siena/Francis does not keep records of clinic visits. T235. Alley also said that he takes methadone for his "[h]allucinations and paranoia." T48. The ALJ asked if the methadone was meant to "help you get off of drugs also, or stay off of them?" T48. Alley responded "I guess. I don't -- I've never really looked at it that way." T48.

After the hearing, Alley's representative said that she believed Alley meant to refer to his prescribed Risperidone, an antipsychotic. T236.

Alley said that although Risperidone helps with his hallucinations, he still hears voices. T56. Additionally, his testimony indicates continuing PTSD flashbacks, paranoia, and violent thoughts. *See, e.g.* T50, 59. Furthermore, he said that Lexapro and Risperidone cause him to feel tired and dizzy. T57. At the time of the administrative hearing, there were no records of further therapy sessions or other mental health treatment. Alley said that although he makes appointments, he has difficulty remembering to attend them, and often forgets what day it is. T57. He also expressed concerns that such treatment, even at a reduced fee, would be too costly for him. T56.

Alley's counsel requested on January 23, 2013 that the ALJ order an additional psychological evaluation in order to fully develop the record. T233. That request was apparently denied. *See* T70. Alley repeated the request during the hearing as well. T70. The ALJ responded, "I'm holding off on that, because . . . if he's not in treatment it's really hard to tell what's going on. So yeah, I'm not that inclined to order more diagnostic testing. . . . I'm inclined to see what's actually going on here. So if you would get me those records [of visits to the Siena/Francis House clinic], I would like to see those." T70. After the hearing, on February 21, 2013, Alley's counsel wrote the ALJ to tell her that the Siena/Francis House does not keep records of clinic visits, and reiterated her request for a new mental health consultation. T235. The ALJ replied, "It is very hard to believe he gets methadone on regular basis at clinic with 'no records.' This negatively affects credibility. I am not ordering another CE . . . ." T237. As previously noted, Alley's representative responded that she believed Alley meant to refer to Risperidone, not methadone. T236.

### III. STANDARD OF REVIEW

The Court reviews a denial of benefits by the Commissioner to determine whether the denial is supported by substantial evidence on the record as a whole. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (citing 42 U.S.C. § 405(g)). Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion. *Id.* The Court must consider evidence that both supports and detracts from the ALJ's decision, and will not reverse an administrative decision simply because some evidence may support the opposite conclusion. *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011). If, after reviewing the record, the Court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. *Id.*

# IV. DISCUSSION

Alley appeals the ALJ's order on two grounds. First, Alley argues that the ALJ's RFC findings were not based on substantial evidence because she relied on "the conjecture and speculation" of Branham and Milne. Second, Alley argues that the ALJ improperly discounted Alley's credibility on the basis that he stopped seeking treatment because the ALJ did not consider his reasons for not seeking treatment.

1. <u>The ALJ's RFC findings were not based on substantial evidence because they were not supported by medical evidence</u>

Alley challenges the ALJ's assessment of his RFC, arguing that it was based not on substantial evidence, but "on the conjecture and speculation of non-examining medical sources." Filing 14 at 7. Alley argues that the ALJ gave inappropriate weight to Branham's opinion—and Milne's affirmation of that opinion—that Alley would no longer have a disability by February 2012. Filing 14 at 7. Alley claims that those opinions are unreliable because they are refuted by evidence of Alley's unchanging and severe symptoms. Filing 14 at 9. Thus, Alley argues, the ALJ's determination that he "improved to the point that his condition was non-disabling prior to February 2012 [is] not based on actual medical evidence or record." Filing 14 at 9. According to Alley, instead of relying on Branham's opinion, the ALJ should have ordered a new psychiatric evaluation to determine whether or not Alley's condition actually had improved. Filing 14 at 9. The SSA, on the other hand, contends that the "ALJ's discussion of the evidence shows that she based her residual functional capacity findings upon Plaintiff's condition during examinations," and not "upon a projected improvement in Plaintiff's condition." Filing 17 at 14.

As an initial matter, it is somewhat unclear from the ALJ's opinion what, precisely, her conclusion was based upon. Alley seems to believe that the ALJ found that Alley's condition improved, from disabled to non-disabled. The SSA, on the other hand, seems to believe that the ALJ found Alley to be non-disabled throughout the relevant time period. The initial denial of Alley's benefits by the SSA was based on "duration," meaning the SSA determined that although he had a disability at the time of his application, he was expected to improve by February 2012—12 months after the alleged onset. T78–79. The denial was affirmed upon reconsideration for the same reason. T88. But the ALJ's decision seems to depart from that reasoning. As best the Court can tell, the ALJ based her decision on a finding that Alley was not disabled at any point between February 2, 2011 and February 2, 2012. Her opinion contains no language indicating that she relied on an improvement in Alley's symptoms; rather, she speaks in general terms of his condition "since

8

February 2, 2011." T20. The Court need not conclusively resolve this question, however, because as explained below, the ALJ's reliance on the opinions of Branham and Milne was erroneous in either case.

The ALJ may assess a claimant's RFC "based on all relevant evidence," but the determination of RFC is a "medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, "[s]ome medical evidence must support the determination of the claimant's RFC." *Id.* (internal citations and alterations omitted). This evidence should include "at least some supporting evidence from a medical professional." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal alterations omitted) (quoting *Lauer*, 245 F.3d at 704).

Here, the ALJ stated that she relied on the opinions of Lindner, Branham, and Milne. T20. However, she gave the opinions of non-examining consultants Branham and Milne "greater weight as they are consistent with the evidence as a whole." T20. The ALJ gave the opinion of Lindner, an examining consultant, "some weight . . . to the extent it is consistent with the residual functional capacity." T20. This is unclear; if the ALJ gave Lindner's opinion weight only to the extent it corroborated her findings, the ALJ could not have relied on Lindner's opinion in making those findings in the first place. Thus, it appears that the ALJ primarily relied on the opinion of Branham, as affirmed by Milne.

First, to the extent the ALJ concluded that Alley did not have a disability at all between February 2, 2011 and February 2, 2012, no medical evidence supports that conclusion. Rather, Branham's opinion suggests that, in fact, Alley did have a disability at the time of his evaluation. On his August 22, 2011 Psychiatric Review Technique, Branham checked the box indicating that Alley's complaints were "Severe But Not Expected to Last 12 Months." His notes confirm that he believed Alley was unable to work at that time: he wrote, "[I]t is reasonable to expect claimant will *regain* the ability to do at least more routine types of work . . . ." T414 (emphasis added). Branham did also fill out a Medical Residual Capacity Assessment, in which he indicated that he expected Alley's abilities to be either "Not Significantly Limited" or "Moderately Limited" in many respects. T416–17. However, that form specified that it represented Alley's *predicted* RFC for "12 Months After Onset: 2/2012." T416. It is clear to the Court that Branham's opinion on August 22, 2011 was that Alley was under a disability, but that the disability would improve.

The examiner responsible for the SSA's initial denial of benefits seems to have read Branham's opinion the same way; the notice of denial upon reconsideration said, "The medical evidence shows that you have mental problems and [*sic*] currently prevent you from working. However, it is

expected that with additional time and treatment, you will be able to do jobs that do not require any special training or skills by 2/12." T88. Furthermore, the other medical opinions in the record likewise suggest that Alley had a disability between February 2011 and February 2012. Milne, of course, affirmed Branham's opinion. And while Lindner did not give an opinion specifically as to whether Alley had a disability, her evaluation suggested that, at a minimum, Alley had significant barriers to maintaining employment. She wrote that Alley "would struggle with relating appropriately to coworkers and supervisors due to his emotional volatility and tendency to react aggressively and struggle with adapting to changes in the environment due to his hostility, paranoid ideation and difficulty in dealing with stressors." T338. She added, "Prognosis is poor." T339. In sum, to the extent that the ALJ concluded Alley was never under a disability between February 2011 and February 2012, no medical professional has given an opinion in this case supporting that conclusion.

Alternatively, to the extent that the ALJ may have found that Alley had been under a disability, but that the disability improved, no medical evidence supports that conclusion either. Branham's opinion does indicate that he believes Alley would be able to do "more routine types of work" by February 2012. T414 However, the ALJ erred in simply assuming this prediction came true instead of determining whether Alley actually had improved as Branham expected.

The ALJ has both the authority and the duty to fully develop the record, independent of the claimant's burden of proof. *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 824 (8th Cir. 2008). For example, in *Scott*, the Eighth Circuit held that where an ALJ denied benefits in part because a claimant's IQ test results were not current on the date of the hearing, the ALJ should have ordered updated tests. *Id.* Similarly, here, because there is no medical opinion as to whether Alley improved or not by February 2, 2012, the ALJ should have ordered a new consultative evaluation. Finding the Commissioner's development of the record inadequate, the Court reverses and remands for further proceedings.[3]

---

[3] Alley additionally asserts the ALJ's RFC findings were not based on substantial evidence both because she determined that "a GAF assessment cannot be afforded significant weight," T19, and because she did not address the "waxing and waning nature of mental illness." Filing 14 at 8. The Court need not reach these issues, as it has already determined Alley is entitled to rehearing.

2. The ALJ's determination of the claimant's credibility

Alley additionally argues that the ALJ improperly concluded that his complaints were not credible based on his lack of treatment and non-compliance. An ALJ is required to consider the reasons for a claimant's failure to seek treatment, or non-compliance with treatment, before discounting the claimant's credibility on that basis. *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) (citing SSR 82-59, 1982 WL 31384 (1982)).

The Court notes, in that regard, that Alley's medical records indicate limited insight and judgment, poor memory, and an incomplete understanding of his medical conditions. *See, e.g.,* T266, T322. Additionally, Alley testified that he was unable to afford even the reduced fee at Lutheran Family Services, T56, and that he was not eligible for services at the VA, T31. To the extent there are inconsistencies in Alley's testimony at the hearing, they could be explained by his mental health symptoms at least as well as by malingering. It is one thing when questions about a claimant's credibility are premised on testimony or evidence that is plainly *inconsistent* with a claimed disability. But it is different when, as here, the evidence relied upon to call the claimant's credibility into question is actually consistent with the claimed disability.

Although credibility is primarily an issue to be weighed by the ALJ, it would present something of a Catch-22 if a claimant claiming disability on the basis of poor memory and cognitive limitations could be denied benefits, in effect, because his memory is poor and his ability to explain his medical condition is limited. But, as the Court has already determined that Alley is entitled to rehearing, the Court need not definitively resolve this issue.

THEREFORE, IT IS ORDERED:

1. This case is reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

2. A separate judgment will be entered.

Dated this 23rd day of November, 2015.

BY THE COURT:

John M. Gerrard
United States District Judge